**HONG SAI CHEE, Plaintiff-Appellant,**

v.

**LONG ISLAND RAILROAD COMPANY, Defendant-Appellee.**

**No. 229, Docket 27963.**

United States Court of Appeals
Second Circuit.

Argued Jan. 7, 1964.

Decided Jan. 28, 1964.

**712**

Donald I. Laventhall, New York City (Leonard Steinman, New York City, on the brief), for plaintiff-appellant.

William F. McNulty, New York City (Otto M. Buerger, Jamaica, N. Y.), for defendant-appellee.

Before MOORE, KAUFMAN and MARSHALL, Circuit Judges.

LEONARD P. MOORE, Circuit Judge

Plaintiff appeals from a judgment in favor of defendant entered after a trial to court and jury.

Plaintiff, a Chinese cook, was injured when struck, while standing at the edge of the westbound platform of defendant's Carle Place station, by the grab iron of the locomotive of a train moving at a high rate of speed in an easterly direction. Defendant was authorized to use the westbound track for its eastbound trains. This "reverse signal operation" was for the purpose of using both tracks in a westerly direction in the morning and in an easterly direction in the evening so as to handle the heavy commuter traffic.

Plaintiff claims that he heard the noise of an approaching train, went to the edge of the platform, peered to the east from which direction he expected the train to come,[1] saw nothing to the east although his view was unobstructed, did not look in the other direction and that he thought that the oncoming train was on the other track. He was struck on the right shoulder while still facing to the east and injured.

At the close of plaintiff's case, defendant moved for the direction of a verdict (1) for failure to establish negligence; and (2) because of contributory negligence. Both motions were renewed at the close of the entire case. Decisions were reversed. The court then submitted the case to the jury (1) for a general verdict, and (2) for a special verdict based upon written questions. The first question called for a "yes" or "no" answer to negligence and proximate cause. The second question, only to be answered if a "yes" answer were returned, related to plaintiff's proof by a fair preponderance that he was not guilty of contributory negligence. Upon the jury's return to the courtroom, the Clerk inquired, "What is your verdict?" The foreman then replied, "For the defendant." Upon inquiry from the Court as to whether the special verdict had been filled out, the foreman replied, "Yes." The jury was polled and all said that they found "a verdict for the defendant." In chambers, the court then advised counsel of the answer to the special verdict questions, namely, negative as to negligence. In addition, eight of the jurors had subscribed to the following statement:

> "We believe that the defendant was guilty of not providing sufficient safeguards for all passengers following the adoption of reverse traffic policy.

> "However, we must find for the defendant on the question (1) because of the evidence in this particular case.

> "We recommend that some solution be found to make it possible to alert all passengers under these conditions,

---

1. No westbound train was scheduled at that hour.

so that a similar accident may be prevented in the future."

The court proceeded to pass upon the motions as to which decision had been reserved and granted them, as he said, "to clear the record." He added, "This being a jury verdict, I am not inclined to set any such verdict aside in any event."

■ Plaintiff contends that the jury's verdict was inconsistent and ambiguous. There is nothing in the record to support this claim. The court said, "I ask you to give a general verdict as well as a special or written verdict." The jury followed this request. Plaintiff creates his own confusion by choosing to misname the written comments by eight of the jurors as a "written verdict." Obviously, it was not, and only represented the thoughts of eight jurors as to general safeguard procedure unrelated to the facts of this particular action.

The judgment read "and the jury having rendered a verdict in favor of the defendant, it is ADJUDGED: That the defendant have judgment against the plaintiff." To the judgment was annexed "An Extract of the Minutes" which read in part "Jury returns verdict for DEFENDANT'S. Jury polled. PLAINTIFF defers motion. DEFENDANT'S motion to dismiss granted." The notice of appeal was from a final judgment in favor of defendant. Additionally, plaintiff appealed from orders granting defendant's motion to dismiss at the close of plaintiff's case and at the end of the entire case but there was no order "granting defendant's motion dismissing the complaint and directing judgment for the defendant at the end of the entire case."

■ Plaintiff also argues that the judgment must be set aside because of defense counsel's alleged appeal on summation to religious and racial prejudice and because of the court's *voir dire* inquiry into plaintiff's religious beliefs. The court's inquiry was not only justified but required in order to determine whether an oath or affirmation was to be administered. Plaintiff stated that he be-

lieved in Buddha. The court then directed affirmation. During the summation, defense counsel, while arguing credibility, said to the jury that they should consider "that all of the witnesses except the plaintiff swore, and I use the word 'swore' in its proper connotation, on a Bible to tell the truth, the whole truth and nothing but the truth. Since the plaintiff is not a believer in the Bible or in God, he only affirms.

"Now the difference between an oath and an affirmation is considerably different. That's just something to think of when you realize that he, and he alone, is the one that tries to make out his case."

These comments of defense counsel were highly improper. There are many peoples of the world who do not accept the Bible or God. For them affirmation, acceptable in lieu of oath, is provided. No reason in law exists for differentiation in the quality of truth between oath and affirmation. Plaintiff's capacity to tell the truth and the truthfulness of his testimony were not diminished in any way by his failure to take an oath and no statement that they might have been should have been made. But whether this constituted reversible error is quite another question. Plaintiff was represented by an experienced and able veteran of the courtroom in the negligence field. He did not object to these remarks when made. It is not for us to speculate whether this was purposeful strategy or inadvertence. In any event, the record discloses that he, in his subsequent summation, fully brought home to the jury the American principle that believers in Confucius, Buddha, or gods other than the Christian God are entitled to equal justice.

■ In our view of the case, this reference could not have affected the verdict of the jury. Plaintiff's version of the accident may be accepted in its entirety and be consistent with the jury's verdict. The undisputed facts establish the eight-inch white warning curb along the edge of the platform, plaintiff's presence at the edge of the platform so close as to be struck by a seven-eighths-inch overhang,

714

the rapidly moving train, the reverse signal operation, the noise of the oncoming train, his facing to the east, and his unlimited view in both directions. Upon all the facts, the jury found for defendant.

Judgment affirmed.

KAUFMAN, Circuit Judge (concurring).

I concur in the result. Like Judge MARSHALL, I believe that the plaintiff failed to produce any evidence of negligence, and I would interpret Judge Levet's granting of the motion to dismiss as a recognition of this fact. It is for this reason alone that the grossly improper comments of defendant's attorney on summation do not require reversal of the judgment.

MARSHALL, Circuit Judge (concurring).

My separate concurrence is to emphasize that if there were the slightest probative evidence of negligence to warrant a verdict for the plaintiff, I would vote to reverse for the error of permitting defendant's attorney to comment on plaintiff's religious beliefs.

Medina, Circuit Judge, dissented.