APPENDIX—Continued
BANKRUPTCY COURT'S "STATEMENT
OF THE COURT'S INTENTION"

AND NOW, this 21st day of June, 1983, upon further consideration of the Debtor's Motion filed in this Court on January 21, 1983 to Vacate Consent Order and for Further Relief, and upon consideration once again of the Court's Order of February 16, 1983 conditionally granting such Motion, it is hereby stated to be the Court's position and present intention that:

(a) the Order of February 16, 1983 was entered by the Court inadvertently;

(b) should this case be remanded by the District Court to this Court, the Order of February 16, 1983 will be VACATED and the Consent Order of October 22, 1983 will be REINSTATED:

(c) should the Debtor renew its Motion to Vacate Consent Order after the case is remanded to this Court, such renewed Motion will be DENIED.

**Charles W. KAZAN and Helen F. Kazan, his wife**

v.

**Melvin WOLINSKI and Anchor Motor Freight, Inc., jointly, severally or in the alternative.**

**Appeal of Charles W. KAZAN.**

No. 82–5733.

United States Court of Appeals, Third Circuit.

Argued Sept. 13, 1983.

Decided Nov. 18, 1983.

William A. DeStefano (argued), Oliver, DeStefano, Pentima & Partridge, Philadelphia, Pa., for appellant; Joseph C. Visalli, Wildwood, N.J., of counsel.

Robert F. Novins (argued), James P. Brady, Novins, Farley, Grossman & York, Toms River, N.J., for appellees.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

### I. *INTRODUCTION*

This appeal is taken by plaintiff Charles W. Kazan ("Kazan") from a judgment of the United States District Court for the District of New Jersey. Kazan prevailed in a jury trial in which the jury returned a $150,000 verdict against defendants Melvin Wolinski and Anchor Motor Freight, Inc. ("defendants"). The district court ordered a new trial when Kazan refused to remit $90,000. During the second trial, the court excluded certain evidence based on statements contained in a mid-deliberation jury communication in the first trial. The second jury returned a verdict of $50,000. Kazan appeals from the final judgment entered on the $50,000 verdict, contending that the district court erred by ordering a remittitur or new trial after the first jury verdict and by giving binding effect to the first jury's mid-deliberation note for purposes of the second trial. Because we reluctantly conclude that the district court erred in its treatment of the jury's mid-deliberation note, we will vacate the judgment of

the district court entered on the second jury verdict and remand for a new trial.

## II. *DISCUSSION*

### A. *Facts and Proceedings Below*

This case arose out of an automobile collision. Kazan sued in federal court, claiming permanent and total disability as a result of injury to his back, neck and left arm.[1] Federal jurisdiction was based on diversity of citizenship. *See* 28 U.S.C. § 1332(a) (1976). Defendants did not contest liability and the case was tried to a jury on the issue of damages only. The jury received conflicting testimony regarding the extent of Kazan's injuries, the degree of his disability, if any, and the cause of his apparent back injury. [App. at 6a]. At the conclusion of the trial the jury retired with instructions to deliver a general verdict.

After one hour the jury sent a note to the trial judge. The note, which was handwritten by the jury foreman, stated in its entirety:

> We have determined that the back injury is not the result of the accident. We, however, feel that compensation should be granted but we are undecided as to how to work out a formula for settlement. [App. at 14a–15a].

The trial judge conferred with counsel for all parties regarding the appropriate response to the jury's note. Counsel did not request that a record be made of that conference. The court thereafter made the following response to the jury:

> I have discussed your communication to counsel and exhibited to them your note and in response thereto I just want to say this without repeating my entire charge on damages to you.
>
> You have indicated that you feel compensation should be awarded—should be granted, but we are undecided as how to work out a formula for settlement.
>
> Members of the jury, there is no exact formula. There isn't any mathematical procedure by which you can reach a determination as to how much damages you are to award to Mr. Kazan and Mrs. Kazan.
>
> You are to take into consideration my charge or instructions on the damage

phase of this case. And, you are to use your good common sense and your judgment in determining what is fair and just and reasonable compensation for those injuries which you have determined are a proximate cause [sic] of the automobile accident. [Transcript II at 103–04].

All counsel specifically approved the court's response. [Transcript II at 104].

The jury deliberated further and returned a general verdict in the amount of $150,000. Defendants moved for a new trial or, in the alternative, for a remittitur. The district court denied defendants' motion for the outright grant of a new trial, but determined that a verdict of $150,000 "shock[ed] the conscience" of the court and "would be a miscarriage of justice." [App. at 6a]. Accordingly, the district court ordered a new trial, again as to damages only, unless Kazan would agree to remit $90,000. Kazan declined the remittitur.

Prior to the second trial defendants moved *in limine* for an order declaring that the jury in the second trial would be bound by the first jury's determination that defendants had not caused Kazan's back injury. That motion was based on the mid-deliberation note of the first jury. The district court observed that its ruling on the earlier remittitur motion had relied in large part on the jury's mid-deliberation note. Although the court's earlier order granting a new trial had not expressly limited the issues to be presented to the second jury, the court granted defendants' *in limine* motion and excluded all evidence of Kazan's back injury on retrial. [App. at 20a, 22a]. Thus limited in the evidence that it received, the jury in the second trial returned a verdict of $50,000. This appeal followed.

### B. *The District Court's Remittitur Order*

Kazan first contends that it was error for the district court to order a remittitur of $90,000 at the end of the first trial. Federal law governs the question whether a remittitur should be granted in diversity actions. *See Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649, 97 S.Ct. 835, 836, 51 L.Ed.2d 112 (1976). Where, as in this case, the proper legal standard has been applied, the district court's grant of a remittitur will

---

1. Helen Kazan, the wife of Charles Kazan, brought a claim for damages *per quod* against defendants. The jury returned a verdict of $25,000 in her favor at the first trial. When she refused to remit $10,000 of that sum, the district court ordered a new trial as to her claim as well as her husband's claim. No appeal has been taken from the second jury's award of $23,600 to Helen Kazan.

be reversed only for an abuse of discretion. *Cf. Draper v. Erie Railroad,* 285 F.2d 255, 256 (3d Cir.1960) (motion for new trial predicated on excessive verdict). No such abuse occurred in this case.

In the first trial Kazan offered proof that he had been permanently and totally disabled as a result of injury to his neck, arm and back. An actuarial-economist testified that Kazan's future lost earnings would amount to $21,000 per year over seventeen years due to his inability to work as a truck driver. [App. at 9a]. That damage projection was premised on the assumption that Kazan's inability to work was caused by injuries, primarily the back injury, sustained in the automobile accident.

The district court noted that the evidence adduced at trial clearly demonstrated that the automobile accident had caused a cervical sprain to Kazan's neck and a surgically-correctable injury to his arm. There was testimony that the neck injury would be permanent. [App. at 9a].

The cause of Kazan's back injury, however, was hotly contested. Kazan testified that he first complained to a neurosurgeon about his back problems after the accident. [Transcript I at 69]. Kazan's treating physician testified that he believed that the back injury was caused by the accident. [Transcript I at 175]. On cross-examination, however, the treating physician testified that Kazan even prior to the accident suffered from a degenerative joint disease in the lower back. [Transcript I at 163–64]. He further testified that the consulting neurosurgeon found evidence of a vascular condition in the back and did not believe that the accident injured Kazan's back. [Transcript I at 175]. The early reports from the treating physician to Kazan's attorney did not mention back problems. [Transcript I at 169–70]. In addition, defendants offered expert testimony that the accident had not caused Kazan's back injury. [Transcript II at 41–44].

█ The trial judge, who was present to hear all the evidence and to observe the demeanor of all the witnesses, including the injured party himself, found that the jury's award of $150,000 was "grossly excessive" in light of the evidence produced. We cannot say that he abused his discretion when he made that finding. Although the evidence created a jury issue regarding the back injury, that evidence weighed decidedly in favor of defendants. Kazan's damage projection depended upon proof that his back injury was caused by the accident and resulted in his loss of employment. The neck and arm injury alone would not have been sufficient in this case to sustain an award of $150,000.

█ The district court noted that it could only speculate as to the reason for the jury's excessive verdict. The court then followed a proper procedure in cases such as this, where no clear judicial error or "pernicious influence" can be identified but where the verdict is so large as to shock the conscience of the court: the court ordered plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur were refused, to submit to a new trial. *See Scott v. Plante,* 641 F.2d 117, 136 (3d Cir. 1981), *vacated on other grounds,* —— U.S. ——, 102 S.Ct. 3474, 73 L.Ed.2d 1362 (1982); *Perzeproski v. American President Lines, Ltd.,* 319 F.Supp. 1329, 1330 (E.D.Pa. 1970).

█ Kazan argues that the district court impermissibly considered the jury's mid-deliberation note in determining whether the evidence could support a verdict of $150,-000.[2] We do not agree. Non-binding jury comments may be considered by the court in order to resolve ambiguities or ascertain the true sense of a jury verdict. *See Griffin v. Matherne,* 471 F.2d 911, 916–17 (5th Cir.1973) (unsolicited jury note and colloquy between judge and jury used to explain and reconcile arguably inconsistent responses to special interrogatories). In this case, the jury's note added support to the court's conclusion that a $150,000 verdict was grossly excessive in light of Kazan's weak case on the causation of the back injury.

█ There is a more important reason why we must dismiss Kazan's challenge to the district court's consideration of the jury's note in the context of the motion for a remittitur. In his brief in opposition to that motion, Kazan argued that the court should consider only the neck and arm injury to determine whether the jury award was excessive.[3] No doubt Kazan made this

---

**2.** This argument is distinct from the contention, addressed in section II. C. *infra,* that the jury's mid-deliberation note should not have been treated as a conclusive factual finding at the second trial.

**3.** *See* Plaintiff's Memorandum of Law in Opposition to Defendant's [sic] Motion for New Trial, or Alternatively, Remittitur and for Credits Against Verdict at 5.

tactical decision to undercut the argument that the $150,000 verdict had been the product of a jury compromise on the issue of the causation of the back injury. Whatever Kazan's motivation, however, he certainly may not advance as error the very conduct that he invited the trial judge to follow on the remittitur motion. Accordingly, we will affirm the district court's order of a remittitur or new trial.

### C. The District Court's Order Limiting the Issues in the Second Trial

The second argument pressed by Kazan is more troublesome. The jury in the first trial was presented with evidence regarding injuries to Kazan's neck, arm and back. The jury was instructed to return a general verdict; neither party requested a special verdict or special interrogatories to accompany the general verdict. See Fed.R.Civ.P. 49(a), (b). When the jury, in the midst of its deliberations, reported that it had determined that the back injury was not caused by the accident but could not arrive at a damage figure, the court instructed the jury to complete its deliberations and arrive at a sum that would be "fair and just and reasonable compensation for those injuries which you have determined [were caused by] the automobile accident." [Transcript II at 104]. Counsel approved that instruction.

In granting defendants' motion in limine prior to the second trial, the district court referred to the causation of the back injury as "a factual issue presented to and re-solved by the jury." [App. at 17a]. In so doing, the court elevated the statements contained in the jury's mid-deliberation note to the status of a special verdict or a response to a special interrogatory. That, we believe, was error.

■ The issue before us presents a question of first impression.[4] On numerous occasions, this court has addressed questions dealing with conclusive findings of fact rendered by juries in the form of special verdicts and special interrogatories. It is well established that the trial court may exercise broad discretion in determining whether to use a general verdict or the procedures described in Rule 49 of the Federal Rules of Civil Procedure. Healey v. Catalyst Recovery, Inc., 616 F.2d 641, 648 (3d Cir.1980). In this case, however, defendants seek to bind Kazan by the statements in the jury's note even though the procedural safeguards of Rule 49 were not followed and even though the note at issue was not the "final" statement of the jury, which deliberated further before returning a general verdict.

■ The disposition of this case below raises three critical problems. First, because the note was delivered in mid-deliberation, we can never be certain that the statements contained therein represented the jury's final determination. No judgment was entered on that interim communication; no matter how unambiguous the terms of the note, the jurors remained free to change their minds when they returned to their deliberations.

---

**4.** Although the cases cited to us by the parties involve extraneous jury comments, each is distinguishable from the case before us. In Woods v. Lowery, 297 F.2d 827 (5th Cir.), cert. denied, 371 U.S. 844, 83 S.Ct. 74, 9 L.Ed.2d 79 (1962), the court refused to find an inconsistency between a general verdict in favor of defendant and the jury foreman's statement, during a mid-deliberation conversation with the trial judge, that the defendant had been at least partially negligent. Id. at 828. The appellate court in Woods emphasized the informality of the foreman's oral remarks: "[W]e do not believe that the informal discussion between the court and jury before the verdict is made can be transmuted into any sort of verdict." Id. Similarly, this case is distinguishable from Hong Sai Chee v. Long Island R.R., 328 F.2d 711 (2d Cir.1964). The jury in Hong Sai Chee returned a general verdict for defendant, which was accompanied by a statement, signed by eight jurors, to the effect that the railroad should be more careful in the future. Id. at 712. The Second Circuit noted that "[p]laintiff

creates his own confusion by choosing to misname the written comments by eight of the jurors as a 'written verdict.'" Id. at 713. In the present case, defendants assert that the jury's note represented the unanimous view of the jury.

Defendants' reliance on Dagnello v. Long Island R.R., 289 F.2d 797 (2d Cir.1961), is far wide of the mark. The jury in Dagnello found for plaintiff and gratuitously itemized the amount of damages for each item of injury. Defendants challenged the itemization for pain and suffering as excessive, as if the jury had returned a special verdict. Plaintiff contended that the reviewing court could only consider the total award. The Second Circuit expressly refused to address that issue, however, holding that the jury's award for pain and suffering was not excessive even if viewed in isolation. Id. at 806. Further, Dagnello did not even present the issue of whether the jury's gratuitous itemizations could be binding in a second trial.

The second problem is related to the first. Counsel in a situation such as the one before us cannot be certain how to act. A spontaneous communication by a jury instructed to return a general verdict occupies no identifiable niche in the familiar array of trial practices. Kazan's attorney could not have been expected to anticipate that his client might some day be bound by the specific factual statement in the note. Important tactical decisions, such as whether to request a poll of the jurors,[5] depend upon an ability to anticipate in advance the consequences to be attached to a jury's communication.

Third, the rule proposed by defendants, which would permit *unambiguous* mid-deliberation determinations by the jury to be treated as conclusive findings of fact, would create confusion and uncertainty in the future. It is not uncommon for jurors to communicate with the court in the course of deliberations or to offer extraneous comments in addition to the general or special verdict requested by the court.[6] Each such communication would create a factual question of ambiguity to be resolved by the trial court and, ultimately, by the appellate courts. Trial attorneys would remain silent at their peril during any jury communication with the court. We will not, of course, reject a party's meritorious argument simply because it may invite future appeals. In this case, however, the rule advanced by defendants would create much confusion with little corresponding benefit in terms of judicial economy. We decline to adopt it.

■ Defendants further assert that Kazan has lost his right to challenge the treatment of the mid-deliberation note because his attorney failed to object to the court's instruction to the jury after the note was read into the record. We cannot accept that argument. The court's response to the note, quoted in its entirety above, did not indicate that the jury would be bound by the terms of the note. Indeed, the court's response more closely resembled a general instruction leaving all issues open for the jury's resolution. The failure to object to that response cannot by itself constitute an abandonment of the issue before us.

Defendants insist, however, that the unrecorded conference among both counsel and the court clearly reflected the view of all parties that the jury's note would be a binding factual finding. This court is certainly at a disadvantage in evaluating that contention. Nothing in the record reflects a universal understanding that the jury's communication would be treated as a conclusive finding of fact. If such was the consensus at the conference, defendants should have ensured that the record would reflect that understanding.

■ Finally, we must address defendants' contention that Kazan "stipulated" to the use of the jury's note as a conclusive finding of fact by limiting his argument on the remittitur motion to the neck and arm injuries. *See* Brief for Appellees at 21; note 3 *supra* and accompanying text. The issue presented at that juncture in the proceedings, however, was quite different from the issue addressed here. Kazan bound himself only for purposes of the remittitur motion. Defendants have not argued that they relied in any way to their detriment on Kazan's tactical choice so as to bind him for the very different purposes of the motion *in limine*.

## III. CONCLUSION

It is with great reluctance that we return this case to the district court for a third trial. The district court has taken great pains to balance Kazan's right to litigate his claims fully and fairly, against defendants' legitimate expectation that they would not be required to relitigate issues that had been determined in their favor.[7] On the

5. *See Humphries v. District of Columbia,* 174 U.S. 190, 19 S.Ct. 637, 43 L.Ed. 944 (1899). "That generally the right to poll a jury exists may be conceded. Its object is to ascertain for a certainty that each of the jurors approves of the verdict as returned; that no one has been coerced or induced to sign a verdict to which he does not fully assent." *Id.* at 194, 19 S.Ct. at 638. We need not determine whether a party may demand a poll of the jury in a civil action as a matter of right or whether that decision is commended to the discretion of the district court upon motion by counsel. Rather,

we merely observe that counsel in this case was not fairly alerted to the possibility that he might be foreclosed from polling the jury on an important finding of fact.

6. *See* note 4 *supra.*

7. Because we hold that the district court erred in treating the jury's mid-deliberation note as a conclusive finding of fact, we need not address Kazan's further argument that the factual issues relating to his back, neck and arm injuries were not so clearly distinct and separable as to

record created by the parties, however, we cannot say that an understanding had been reached regarding the conclusive effect to be given to the jury's note. For the reasons stated above, we cannot treat a mid-deliberation communication by the jury as a conclusive finding of fact absent such an understanding. Accordingly, we will vacate the judgment of the district court entered on the second jury verdict and remand for proceedings consistent with this opinion.

permit a partial new trial. *See Vizzini v. Ford*

*Motor Co.,* 569 F.2d 754, 760 (3d Cir.1977).