Jack **ZIMMERMAN** and Tammie Zimmerman, h/w, Plaintiffs,

v.

**BAKER–PERKINS, INC.,** California Home Brands, Inc., National Can Corporation and National Pet Food Corporation, Defendants.

Civ. A. Nos. 85–5100, 86–6987.

United States District Court, E.D. Pennsylvania.

Feb. 24, 1989.

Joseph Lurie, Galfand, Berger, Senesky, Lurie & March, Richard M. Jurewicz, Philadelphia, Pa., for plaintiffs.

Nathaniel E.P. Ehrlich, Post & Schell, P.C., Philadelphia, Pa., for Nat. Can Corp. and Nat. Pet Food Corp.

Benjamin E. Zuckerman, Sherr & Zuckerman, P.C., Norristown, Pa., for Baker Perkins, Inc.

Byron L. Milner, Albert L. Bricklin, Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for California Home Brands, Inc., California Home Base Foods, Inc.

**MEMORANDUM AND ORDER**

ROBERT F. KELLY, District Judge.

This is a personal injury suit based on strict liability and negligence theories. On December 3, 1984, plaintiff Jack Zimmerman suffered injuries to his left hand when it came in contact with the rotating blades of a dog food mixer manufactured by Baker–Perkins, Inc. (Baker–Perkins). Plaintiff was attempting to remove lumps of dog food which had accumulated near the discharge area of the mixer.

Plaintiff's products liability claim alleges design defects and failure to warn. The alleged design defects include the absence of an interlock door mechanism which would prevent the blades from rotating while the discharge door was opened and a two hand jog button which would permit the blades to rotate with the door open only if activated by both of the operator's hands. The negligence claims against the manufacturer and the two suppliers, California Home Brands, Inc. (California Home Brands) and National Can Corporation and National Pet Food Corporation (National Can), allege failure to provide appropriate warnings on the mixer. After a seven day trial, a jury returned a verdict in favor of Jack Zimmerman and against all defendants in the amount of $1,750,000 and a loss of consortium verdict in favor of Tammie Zimmerman for $500,000.

The defendants have filed post trial motions requesting judgment n.o.v. or, in the alternative, a new trial.[1] For the reasons set forth below, we shall grant judgment n.o.v. as to all defendants on the negligence counts and a new trial as to Baker–Perkins on the strict liability claim based on the excessiveness of the verdict.

A trial judge may grant a new trial because of excessiveness if the verdict is so large as to shock the conscience of the court. *See Kazan v. Wolinski*, 721 F.2d 911, 914 (3d Cir.1983). In *Ammon v. Arnold Pontiac–GMC, Inc.*, 361 Pa.Super. 409, 522 A.2d 647 (1987), the court listed a

1. Plaintiffs filed a Motion to Amend and Mold the Verdict to include Delay Damages. Given      the disposition of defendants' motions, we shall deny plaintiffs' motion as moot.

number of factors to consider in determining the excessiveness of a particular verdict:

(1) the severity of the injury, (2) whether plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will effect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of plaintiff's out-of-pocket expenses, and (6) the amount plaintiff demanded in the original complaint.

*Id.* 522 A.2d at 649 (citations omitted).

In this case, the evidence showed that plaintiff suffered a laceration of the left hand resulting in mutiple fractures, tendon injuries and loss of blood to the thumb, index, long and part of the ring finger. Plaintiff underwent surgery to reattach the hand, and while the hand looks good, it has limited physical function. Dr. Richard Dabb, plaintiff's treating physician, presented medical evidence relating to plaintiff's injuries and surgical procedures.

Dabb testified that plaintiff's injuries were permanent. Dabb further testified that plaintiff would have difficulty doing labor requiring "sensitivity of his thumb and fine motor functioning with his injured hand." Plaintiff's Brief, p. 35.

Relying largely on Dabb's medical reports, Mr. Robert Wolf, plaintiff's vocational expert, opined that plaintiff has a 35% disability. According to Wolf, this disability translates into a reduction in future earning potential and a loss of $371,567. On cross examination, Baker–Perkins introduced a medical report by Dabb dated March 5, 1987, which Wolf had not reviewed in preparing his testimony. This most recent report indicated improvement in the hand and that " 'the hand basically would function extremely well as a helper to the other hand. Some discreet functions of the hand for some jobs might be impaired by his injury at this time.' " Baker–Perkins Brief, p. 57.

The testimony at trial also revealed that in March, 1987, approximately one year before the start of trial, plaintiff began working as a dry wall finisher earning more money than he was before the accident. As pointed out by Baker–Perkins, "[n]othing in the record indicates that Dr. Dabb has advised Mr. Zimmerman against this work or told him that it is outside the scope of his physical abilities." Baker–Perkins Brief, p. 58.

Plaintiff's out-of-pocket expenses totaled $26,780 for past medical expenses. Finally, in addition to punitive damages, plaintiffs requested judgment against defendants on each count in excess of $50,000 plus interest and costs. The amount demanded in the complaint, however, is not relevant in determining the excessiveness of this particular verdict. *See* E.D.Pa.R. 30. Based on the above, we are convinced that the evidence does not support the incredible verdict rendered in favor of Jack Zimmerman.

■ The jury also entered a verdict in favor of Tammie Zimmerman in the amount of $500,000. We find this verdict to be excessive and not supported by the evidence. Although the evidence showed that plaintiff's wife provided a substantial amount of care to plaintiff following the accident and that the plaintiff's injury adversely affected the Zimmerman's relationship, there was no testimony "indicating any present strain or disruption of the marital or other relations between Mr. and Mrs. Zimmerman. While Mrs. Zimmerman confirmed that the stress and strain of the injury did cause some marital discord, she confirmed that these problems have long since cleared and that she and her husband have a positive, constructive relationship with each other...." Baker–Perkins' Brief, pp. 61–62.

■ Plaintiffs' negligence claims were brought under Restatement (Second) of Torts § 388. This section provides:

One who supplies directly or through a a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a

person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Id.* Plaintiffs allege that the defendants were negligent in supplying the mixer without a warning regarding the hazard of the rotating blades. The evidence revealed that the manufacturer supplied the mixer to National Can in 1972, that National Can supplied the mixer to California Home Brands in 1979 and that California Home Brands supplied the mixer to Perk Foods, plaintiff's employer, in 1981.

Defendants argue, *inter alia,* that the evidence was insufficient to establish a causal connection between the failure to warn and the injury sustained by the plaintiff. Plaintiffs contend that the issue of causation was properly submitted to the jury. The Third Circuit has explained:

Under Pennsylvania law, although the question of causation is ordinarily for the jury, if relevant facts are not in dispute and the remoteness of any causal connection between the defendant's conduct and the plaintiff's injury clearly appears, the question becomes one of law so that a directed verdict on the question of causation would be appropriate. *Powell v. J.T. Posey Co.,* 766 F.2d 131 (3d Cir.1985), *Conti v. Ford Motor Co.,* 743 F.2d 195 (3d Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985). In order for the plaintiff to raise a jury question as to whether the failure to warn of latent dangers was the cause-in-fact and proximate cause of his or her injuries, there must be enough evidence to support a reasonable inference, rather than a guess, that a warning may have prevented the accident. *Id.*

*Petree v. Victor Fluid Power, Inc.,* 831 F.2d 1191, 1195 (3d Cir.1987).

The evidence clearly demonstrates that even had a warning been affixed to the mixer, plaintiff would not have acted any differently. Mr. Zimmerman testified that before beginning work at Perk Foods, he received a safety manual which specifically warned:

Machines must be turned off and allowed to come to a complete stop before attempting to clear the machines.

Hands and arms must be kept clear of operating machinery at all times.

Exhibit BP–5, CHB–1. Plaintiff confirmed that he "went through" the manual and "that he was well aware that he was not to place his hand in the moving machine as described in the employee handbook." National Can Corporation's Brief, p. 3.

Plaintiff further testified that he thought the mixer was off when he began to remove the dog food. Prior to the accident, plaintiff had turned off the mixer to work on another machine and when he returned, he noticed lumps of dog food near the discharge door " 'piled up real high' " and that the assembly line was not moving. Because plaintiff believed that the mixer was off, he never checked to see whether the controls for the mixing blades were on or off.

We agree with the defendant Baker–Perkins when it states:

There is no basis for a jury to believe that [Zimmerman] would have paid any more attention to a warning sign than he did to the control switches ... Any conclusion that he would have done so would have to be based on guesswork or speculation and not upon reasonable inferences from any testimony in this case.

Baker–Perkins Brief, p. 35. Nothing in the record suggests that had a warning been placed on the mixer, it would have prevented plaintiff's accident. Although plaintiff's liability expert testified about a proposed warning, this testimony, standing alone, is not "enough evidence to support a reasonable inference, rather than a guess, that a warning may have prevented the accident." Accordingly, this court finds, as a matter of law, that plaintiffs have failed to prove that defendant's failure to warn was the

cause-in-fact and proximate cause of plaintiff's injury.

## ORDER

AND NOW, this 24th day of February, 1989, it is hereby ORDERED and DECREED that judgment n.o.v. is entered in favor of all defendants and against plaintiffs on the negligence counts and that a new trial shall be granted as to defendant Baker–Perkins, Inc. on the strict liability count.

It is further ORDERED that plaintiffs' Motion to Amend and Mold the Verdict to include Delay Damages pursuant to Pennsylvania Rule of Civil Procedure 238 is DENIED.