GARTH, Circuit Judge,
dissenting:
While I join the Court in its holdings on all of the substantive issues discussed in sections II.A through II.D of its opinion (with but one caveat stated in the margin),[1] *471 I am obliged to write separately in dissent on the issue of punitive damages.[2]
I.
I am compelled to disagree with the majority’s reduction of the punitive damages assessed against EBI not only because that monetary reduction has no principled basis, but also because the standard of review that this Court has previously established and announced has been totally ignored. See Keenan v. City of Philadelphia, 983 F.2d 459 (3d Cir.1992). While Dunn v. HOVIC, 1 F.3d 1371 (3d Cir.1993) (en banc), to which the majority refers, see Maj. Op. at 468, dealt with punitive damages but only in a product liability context, ie., asbestos damage awards, Dunn did not provide nor attempt to provide a standard of review that contradicted or overruled Keenan. Indeed, Dunn did not even cite to Keenan and the Dunn court, which was concerned solely with due process considerations, explained its result only in terms of successive and multiple damage awards which asbestos product liability cases might generate, a situation that obviously is not relevant in the present case. Neither Dunn nor Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), on which the majority relies in Dunn and which I discuss in Section III, infra, bear on the standard of review. Instead, the majority here has substituted its own discretion and judgment (see Maj. Op. at 469) — without warrant from precedent or statutory authority — for our announced standard of review, and for that of the District Court, to whose discretion and judgment we are bound to give a “super-” deference, especially after a grant of remittitur. See also Tingley Sys., Inc. v. Norse Sys., Inc., 49 F.3d 93 (2d Cir.1995) (reviewing decision to remit punitive damages under abuse of discretion standard; punitive award must “shock to conscience” to warrant reversal); Hiltgen v. Sumrall, 47 F.3d 695 (5th Cir.1995) (reviewing remittitur under “considerable deference” standard).
Struggle as it might, the majority opinion still cannot explain why it fails to follow the controlling standard of review set forth in Keenan. See Maj. Op. at 469. The majority has sought to gloss over the significant differences between product liability eases, whose reductions of punitive damages awards stem from the fear of multiple and successive punitive awards, and cases such as this one where no such circumstances obtain. Moreover, the majority has not acknowledged that the cases on which it relies are fundamentally different from this case, in that those cases, such as Haslip and Dunn, were not concerned, as we are, with the standard of review, but rather were focussed on due process considerations.
Nor is the majority on sound ground when it points out that those cases that relied upon our Keenan standard of review did not uphold the district court’s remitti-turs. All that argument demonstrates is that the evidence in those cases — Gumbs and Keenan — did not satisfy our heightened standard of review.[3] In this case, Judge Orlofsky’s discretion, based on the overwhelming evidence and the jury’s 22 *472 special verdict findings, more than satisfied that standard. Ergo, our decision should have been to affirm rather than to try to explain away what cannot be explained.
I recognize that the amounts of money involved are extremely substantial, and that even the least of those amounts is very significant. A reduction from $100,-600,000 jury verdict to a $50,000,000 remit-titur award to the $1,000,000 majority award (without principled explanation or analysis) is eyebrow-raising. Even if I, like the majority, wanted to reduce the jury’s award or Judge Orlofsky’s remitti-tur because of their respective sizes, I could not bring myself to do so because no principled basis exists for such a dramatic reduction. I note also that it was because of the amount of punitive damages as well as our own desire to arrive at a principled formula for their ascertainment — a task at which the majority has not succeeded-— that we devoted most of the time allotted at oral argument to that subject.
However, we should not and cannot be swayed by the dollar amount of the damages if the ultimate decision at which we arrive is a principled decision that respects the standard of review by which we are bound. Justice Frankfurter in Rochin v. California, 342 U.S. 165, 170, 72 S.Ct. 205, 96 L.Ed. 183 (1952) expressed it succinctly when he stated: “We may not draw on our merely personal and private notions and disregard the limits that bind judges in their judicial function.” Our judicial function, as I perceive it, is to adhere to our announced standard of review until it is overturned by our entire Court or by the Supreme Court.
Thus, my primary focus in this dissent deals with the standard by which we must review the District Court’s remittitur order. It is that standard which dictates the result I have reached and which gives rise to the flawed majority opinion respecting punitive damages. My secondary focus centers on the manner by which the majority has reduced Judge Orlofsky’s remit-titur in derogation of precedent and our standard of review.
Therefore, while I agree with the majority’s disposition on all other issues, I respectfully dissent from the majority opinion as to the amount of punitive damages to which Orthofix is entitled. Rather, pursuant to our standard of review, I would affirm the District Court’s remittitur of $50,000,000.
II.
This Court’s review of a District Court’s punitive damage remittitur is remarkably circumscribed and consists of three elements. We have held that when examining the excessiveness of a punitive damages award, our review “is [1] severely limited: [2] we may ... reverse and grant a new trial only if the verdict is so grossly excessive as to shock the judicial conscience. [3] Where the district judge grants a remittitur, deference to the trial court is heightened. Our review requires additional deference to the district court since it already granted a remittitur.” Keenan, 983 F.2d at 472 (internal quotations and citations omitted, and brackets and emphasis added). Dunn is not to the contrary, because as I have pointed out, Dunn is a due process/product liability case and it leaves intact the standard of review which Keenan announced when a district court orders a remittitur. Thus, because the trial judge is in the best position to oversee whether the jury verdict is rationally based, when the trial judge grants a remittitur this Court will not reverse unless we find the District Court abused its discretion when measured against our standard of “heightened deference.” Gumbs v. Pueblo Int’l, Inc., 823 F.2d 768, 771-72 (3d Cir.1987). See also Kazan v. Wolinski, 721 F.2d 911 (3d Cir.1983). Cf. Delli Santi v. CNA Ins. Cos., 88 F.3d 192 (3d Cir.1996); Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir.1995).
*473 Here, the jury awarded Orthofix $100,-600,000 in punitive damages, a figure it evidently derived from evidence in the record indicating that Biomet’s cash on hand for the 1996 fiscal year was approximately $100,600,000. The District Court reduced this amount to $50,000,000 in its remittitur order, apparently to bring the award in line with the compensatory damages of $48,000,000 proven at trial and found by the jury. The District Court, which, as the majority notes, was “intimately familiar with the case and the evidence,” Maj. Op. at 462, had been involved with the litigation for over three years (including a two month trial) and in its discretion had equated the punitive damages to the compensatory damages on a 1:1 ratio.
Despite this exercise of the District Court’s discretion, a discretion that the majority has found not to have been abused or to have “shocked the judicial conscience” — indeed, without any principled basis at all, with no reference to the record, and in utter disregard of our standard of review, the majority has further reduced the punitive damages from $50,-000,000 to $1,000,000. Nor has the majority made any reference in its opinion to the “heightened deference” that we owe to the District Court when it has granted a re-mittitur.
The analysis provided by the majority to support its peremptory reduction of 98% (based on a reduction to $1,000,000) of the remitted punitive damages award is unprecedented in this Circuit. While the majority was correct in rejecting EBI’s arguments for reduction based upon the “alleged passion or prejudice” of the jury, Maj. Op. at 464, the majority nonetheless has arbitrarily reduced the punitive damages award based only upon its interpretation of the “guideposts” found in BMW of North America v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and two Tenth Circuit cases that have sought to explain them, FDIC v. Hamilton, 122 F.3d 854 (10th Cir.1997) and Continental Trend Resources, Inc. v. OXY USA, Inc., 101 F.3d 634 (10th Cir.1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997), as well as Dunn, 1 F.3d 1371.[4]
Specifically, the majority concludes that, based upon factors mentioned in those cases, “EBI’s conduct, which inflicted only economic harm for which large compensatory damages have been awarded, was not sufficiently egregious to warrant a punitive damages award of $50 million.” Maj. Op. at 467-68. I am hard pressed to understand that conclusion in light of the jury findings of egregious, intentional and deceitful behavior by EBI, and by the lack of record evidence in the majority opinion which could shore up such a reduced award.
The jury, in its responses on the special verdict sheet, answered that it had found by a preponderance of the evidence: that EBI intentionally and improperly interfered with Orthofix’s reasonable expectations of economic advantage; that EBI wrongfully and intentionally interfered in the contractual relations between Orthofix and Inter Medical; that EBI made false statements either knowingly, recklessly or negligently that injured Orthofix; that EBI’s conduct in “passing off’ its own products as those of Orthofix was likely to cause confusion as to the source of those products; that EBI made false statements that deceived or were likely to deceive, in violation of the Lanham Act and to the likely detriment to Orthofix; that EBI had uttered injurious falsehoods in violation of the Lanham Act; and that EBI competed unfairly in violation of New Jersey statutory and common law. The jury further found by clear and convincing evidence that Orthofix had suffered harm as a result of EBI’s actions and that EBI’s conduct was actuated by “actual malice or were accompanied by a wanton and willful *474 disregard” of those who foreseeably would be harmed by its conduct.
Yet, despite these extraordinary findings, and despite the lack of evidentiary support, the majority relies on only one aspect of the element of “reprehensibility”[5] in deciding to reduce the District Court’s remittitur: its conclusion that the damages inflicted by EBI were economic in nature. Maj. Op. at 466-67. I discuss this aspect of the majority opinion in section IV of this dissent, after noting the majority’s failure to recognize and apply the Third Circuit standard of review pertaining to a punitive damages remittitur.
III.
I find fault with the majority opinion because, as I have already pointed out, the majority opinion has neglected either to state or to apply the standard of review relating to punitive damages. See Keenan, 983 F.2d at 472. I have recited our standard in the earlier portion of this dissent as review that is: 1) extremely limited with reference to the District Court’s discretion; 2) subject to a “shock the conscience” scrutiny; and 3) characterized by a “heightened deference” when a remitti-tur has been granted, as there was here.
The majority opinion, in referring to our en banc decision in Dunn, which involved the due process impact of multiple and successive awards of punitive damages in asbestos related injury cases, did not specify the standard of our review of a District Court’s judgment. The nearest Dunn came to enunciating such a standard was its reference to the Supreme Court’s decision in Pacific Mutual Life Insurance Company v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Haslip stated that an appellate court should determine whether a particular award is “greater than reasonably necessary to punish and deter” — hardly a formulaic standard of review. See Dunn, 1 F.3d at 1385 (quoting Haslip, 499 U.S. at 19, 111 S.Ct. 1032). That same rubric is repeated by the majority in this case. See Maj. Op. at 467 & 468. Significantly, however, just as Haslip provides no analysis to determine whether a particular award is “greater than reasonably necessary to punish and deter,” neither does the majority here give us the benefit of its analysis and wisdom when it concludes (in citing Haslip) that any award larger than $1,000,000 is not “reasonably necessary to punish and deter.” Maj. Op. at 468 (citing Haslip, 499 U.S. at 19, 111 S.Ct. 1032).
Hence, I emphasize and maintain that neither Haslip nor Dunn[6] has superseded this court’s prescription held in Keenan, providing the appropriate standard of review after a remittitur has been ordered. This is particularly so, since there has been no endeavor on the part of the majority even to acknowledge the specific findings made by the jury and to analyze the District Court’s opinion. That opinion discussed at length the factors to be given consideration under the New Jersey Punitive Damages Act.[7]
*475 Nor does the majority acknowledge that Haslvp obviously informed this court’s decision in Keenan. Haslip was decided in 1991. Keenan was decided a year later, in 1992, and Haslip was the subject of discussion in Judge Higginbotham’s separate opinion. Accordingly, the majority’s reliance on Haslip has little to do with its lack of reliance on Keenan. Further, Keenan’s standard of review has obviously survived even in light of Dunn because as mentioned Dunn has no relevance to the instant appeal. As noted, Dunn was a product liability case concerned with the implications of multiple and successive punitive damage awards as they are affected by principles of due process, which explains Dunn’s reliance on Haslip. Haslip also concerned the due process implications of punitive damage awards. 499 U.S. at 18, 111 S.Ct. 1032.
A more pertinent precedent — cited in passing by the majority, see Maj. Op. at 464 — is Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989), which affirmed a punitive award of $6,066,082.74 and a compensatory award of $51,146, a ratio of approximately 12:1. In so holding, the Supreme Court prescribed that in reviewing a district court’s decision whether to order a new trial on the issue of punitive damages, an appellate court has a “limited function” and affirmed the principle that' appellate courts should “continue to accord considerable deference” to the district courts. 492 U.S. at 279, 109 S.Ct. 2909. Undoubtedly, this prescription underlay the adoption by our court of the Keenan standard of review.
One appellate court has characterized a jury verdict that would “shock the conscience” as one that was so large as to be contrary to reason, or so exaggerated as to demonstrate the existence of bias or some other improper motive. Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir.1983). Here, however, the majority does not hold that either the original jury award or the remitted award was so large as to be contrary to reason, nor could it. The defendants collectively are entities worth over $1 billion dollars, and a $50 million punitive damages award cannot be deemed unreasonable. Moreover, the majority explicitly holds that prejudice or bias was not a factor in the award. Maj. Op. at 464. Nor has the majority held (as I suggest it cannot in light of the record) that the District Court abused its discretion. Indeed, in its remittitur opinion, dated August 28, 1997, the District Court identified and discussed at length the seven factors required by New Jersey law in assessing whether the amount of a punitive damage award was reasonable.[8] Despite the dictates of our limited standard of review, at no point does the majority opinion even discuss this analysis by the District Court, nor explain how it believes the District Court abused its discretion.
Having failed to explain and having failed to hold that the District Court abused its discretion, or that the award “shocked the judicial conscience,” and having failed to give any deference, let alone “heightened deference” to the District *476 Court’s remittitur, it is evident that the majority has also failed to adhere to this Court’s established standard of review, and has consequently erred in its decision.
IV.
The majority’s arbitrary reduction in punitive damages to $1,000,000 is not justified by the evidence and is without any basis in principle or precedent. Moreover, the authorities to which the majority has looked for guidance, argue instead for affirming the District Court’s remittitur. Indeed, no case cited by the majority has held definitively that cases involving only economic controversies warrant a lower punitive damages award than those involving noneconomic damages such as threats to public health.
While the BMW Court suggested that economic harm alone is not normally associated with “particularly reprehensible conduct,” 517 U.S. at 576, 116 S.Ct. 1589, that is only one element of the “reprehensibility” analysis. See Continental Trend Resources, 101 F.3d at 638; Lee v. Edwards, 101 F.3d 805 (2d Cir.1996) (listing other elements). The other, elements which must be taken into account, such as intentionality, repetitive conduct, and conduct involving deliberate false statements, etc., were all found by the jury to have occurred in this case.
However, evidence produced at trial, but not mentioned in the majority opinion, indicated that EBI’s conduct could involve potential physical harm to the wider community as well as economic harm. EBI was found liable for passing off its own products as those of Orthofix, a recognized and respected manufacturer of bone fixa-tors. There is evidence in the record that on at least one occasion, the deceptive substitution of EBI bone screws and ankle clamps for use in conjunction with Orthofix fixators could have injured patients. Therefore, the jury could well have concluded that the deceptive practices engaged in by EBI not only caused economic damage to Orthofix, but also exposed orthopedic patients to increased harm, to say nothing of the liability of hospitals when they unknowingly used EBI’s bone screws and clamps believing them to have been manufactured by Orthofix. Even if this evidence is disregarded — as the majority disregards it — and even if one focuses only on the economic aspects of the damages caused by EBI, this Court must still affirm by deferring to the District Court’s remit-titur.
As mentioned, EBI was found to have engaged in a series of continuous and intentional deceptive acts in order to steal a market from Orthofix worth approximately $95 million. This evidence, which the majority credits, Maj. Op. at 467-68, is more than sufficient to justify the jury’s finding of reprehensible conduct, which is the “most important indicium” among the guideposts.[9] BMW, 517 U.S. at 575, 116 S.Ct. 1589. See also note 5, supra. That finding distinguishes this case from BMW in which the Supreme Court found “none of the aggravating factors” associated with reprehensible conduct. 517 U.S. at 576, 116 S.Ct. 1589. Indeed, the Supreme Court in BMW indicated that cases involving such deceptive conduct would justify a high punitive award. 517 U.S. at 576, 116 S.Ct. 1589 (“[Ijnfliction of economic injury, especially when done intentionally through affirmative acts of misconduct ... can warrant a substantial penalty”). Cf. Balsamides v. Perle, 313 N.J.Super. 7, 712 A.2d 673, 685 (App.Div.) (stating punitive damages can be awarded for breach of contract in commercial dispute where there has been a “breach of trust beyond the contractual breach”), certif. granted, 156 N.J. 425, 719 A.2d 1023 (1998).
*477 The specific cases relied upon by the majority do not support its holding that economic damages alone justify a lowering of a punitive damages award. While the Tenth Circuit in Continental Trend Resource's and Hamilton did discuss the economic nature of the damages, the holdings of those cases were far more concerned with the constitutionality of the ratio of punitive damages to compensatory damages- — another of BMW’s “guideposts.” See BMW, 517 U.S. at 580, 116 S.Ct. 1589.
The majority understandably does not' dwell on the ratio of the jury’s compensatory damages award of $48,000,000 to its proposed punitive damage award' of $1,000,000. It makes no such comparison because in each of the cases cited, the punitive damages were far greater than the compensatory damages. BMW, which focussed on the ratio between punitive damages and compensatory damages, implicitly assumed the former would be higher than the latter in most cases. 517 U.S. at 580-82, 116 S.Ct. 1589. Under the majority’s approach here, the opposite is true and the majority’s reliance upon BMW suffers because of that fact.
On the other hand, Judge Orlofsky’s rer mittitur of $50,000,000, which I would affirm, when compared to the compensatory damages of $48,000,000, is essentially a 1:1 ratio, and well within the guidepost of BMW. The District Court’s remittitur ratio is also a far more acceptable ratio than even the 6:1 ratio found to be permissible by the Tenth Circuit, or the 4:1 ratio affirmed in Haslip. See Hamilton, 122 F.3d at 862; Continental Trend Resources, 101 F.3d at 643. Indeed, the Supreme Court has intimated that the ratio of punitive damages to compensatory damages could be even higher than 6:1 in economic damages cases taking into- account the damages that would have accrued had the defendant succeeded in its egregious conduct. BMW, 517 U.S. at 581, 116 S.Ct. 1589 (approving a 10:1 ratio in TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) and stating that punitive damages should be assessed in the context of harm that was likely to occur as well as harm that did occur). See also Browning-Ferris, 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (12:1); Watkins v. Lundell, 169 F.3d 540 (8th Cir.1999) (4:1 ratio); Neibel v. Trans World Assurance Co., 108 F.3d 1123 (9th Cir.1997) (6:1 ratio).
V.
Finally,- I take issue with the standard against which the majority measured its award of punitive damages. The majority standard, rather than relying on our standard of review, alarmingly requires instead that an appellate panel “must rely on its combined experience and judgment” when reducing a remittitur. Maj. Op. at 468-69. The majority therefore, consonant only with its own devised standard and with reference only to its own judgment, holds, in eonclusory fashion, that “[ajfter reviewing the record and the arguments in this case, we conclude that the proper, reasonable punitive damages award is no more than $1 million.” Maj. Op. at 468-69. Any amount greater than that, the majority concludes, would not be “reasonably necessary to punish and deter.” Maj. Op. at 470. As I have indicated, no analysis accompanies this ipse dixit conclusion.
Not only does this mysterious and unauthorized standard provide no instruction to the trial courts, or litigants, but, as I have discussed above, it totally ignores our precedential standard of review, announced in Keenan, 983 F.2d 459, under which we are obligated to give additional deference to the district court’s experience and judgment except where the award shocks the conscience or when the district court has abused its discretion. Here, the majority has followed its own “merely personal and private judgment” in arriving at a proper amount of punitive damages, rather than confining itself to “the limits that bind judges in their judicial function.” See Rochin, 342 U.S. at 170, 72 S.Ct. 205.
*478 VI.
I acknowledge that punitive damages continue to be a problem vexing both the state and federal courts. See Milo Geye-lin, Philip Mottíb Hit with Record Damages, WALL ST. J., March 31, 1999, at A3 (reporting punitive damage award of $80.3 million); Milo Geyelin, Jury Awards $50 Million to Ex-Smoker, WALL ST. J., Feb. 11, 1999, at A3 ($51.5 million). Yet, neither the state nor federal courts have fashioned a sure-fire recipe to solve the question of “how much,”[10] even though we have prescribed a formula — our standard of review — to be employed.
Nevertheless, a Court of Appeals cannot “willy-nilly,” in an effort to reach what it considers to be the “right figure,” arbitrarily pull a punitive damage award from the air as if it were a lottery number and announce “in our judgment,” this is it! I feel strongly that a court of review, such as we are, must not only furnish guidelines to the bench and bar, but even more importantly, it must set an example of correct judicial behavior by adhering to announced principles of jurisprudence. To do so, it must remain “within the limits that bind judges in their judicial function.” See Rochin, 342 U.S. at 170, 72 .S.Ct. 205. Failure to do so can lead only to arbitrary, capricious and/or emotional judgments beyond the realm of principle.
In this case, I believe the majority’s decision, excellent in all other respects, has failed to adhere to its proper judicial function when speaking to the issue of punitive damages. It has failed to recognize what the court must regard as our declared standard of review — see Keenan, Gumbs, Delli Santi, Starceslci, supra, etc. At the very least, the majority opinion has now added confusion to this court’s standard by referring to a “standard” derived from in-apposite cases which pre-existed Keenan. It has substituted its personal judgment for a principled review function over a District Court’s discretion; and without relying on record evidence, it has reached a bottom line “lottery” figure of $1,000,000 relying only on its own “experience and judgment.” Maj. Op. at 468-69. Such a practice is neither principled jurisprudence nor is it Third Circuit jurisprudence. If the majority now holds that, in light of the sequence of cases — Haslip in 1991, Keenan in 1992, and Dunn in 1993 — and in light of the materially different contexts of these cases, that our remittitur standard of review has now been whittled down so that no analysis aside from an ad hoc panel’s “combined experience and judgment” is required in reviewing a district court’s re-mittitur, then all the more reason why this court must address and resolve this confusion by establishing firm guidelines.
Accordingly, I respectfully dissent from the standard of review and the resulting punitive damage award announced by the majority. Instead, I would affirm the District Court’s remittitur of $50,000,000.

. Each of the issues raised by EBI has been more than adequately explained and rejected by the majority opinion. However, I note that in one area, while I agree with the conclusion that the District Court’s interpretation of Paragraph 6(d) of the parties' Distributor Agreement, containing the "in any way handle" clause precluded EBI from manufacturing or producing its own bone fixators during the course of the Agreement, I question whether the breadth of the majority's holding with respect to the District Court's charge truly represents the jurisprudence of this Circuit.
It must be remembered that the District Court had ruled, over EBI's objection, in an in limine proceeding that Orthofix's interpretation of the "in any way handle” clause was correct, which then became the law of the case. At the conclusion of the trial, EBI submitted a proposed charge that affirmatively incorporated the District Court’s interpre-lalion of Paragraph 6(d), which the District Court adopted in all respects pertinent to this appeal. Once EBI had objected and presented arguments in support of its interpretation of Paragraph 6(d) at the in limine proceeding, I agree that thereafter EBI was not obliged to object to the charge of the District Court, which incorporated its in limine ruling, in order to preserve the issue on appeal. See, e.g., Smith v. Borough of Wilkinsburg, 147 F.3d 272 (3d Cir.1998). However, I cannot agree that when EBI submitted its own charge that parroted in essential respects {i.e., the interpretation of "in any way handle”) the District Court’s ruling, that EBI could thereafter raise the issue on appeal, claiming that it had preserved the issue, especially when the District Court essentially adopted EBI's proposed charge.
I know of no case in our Circuit where the submission of a requested charge which was then adopted by the District Court would not *471 foreclose ihe party requesting the charge from thereafter being bound by it. Hence, although it does not disturb the disposition reached by the majority affirming the District Court's interpretation of Paragraph 6(d) — a disposition in which I join — I do raise a question as to the expansiveness of Lhe doctrine arguably embraced by the majority. It seems to me that our opinion would be far more in tune with our prior precedents were we to restrict ourselves to approving preservation of an issue only when the affected party had not in effect estopped itself by submitting a requested charge which affirmatively incorporated an adverse ruling.

. Punitive damages are discussed by the majority in Section II.E of its opinion.

. Of course, insofar as Gumbs was decided before Keenan, it did not have the benefit of the fully-enunciated and controlling standard established by Keenan, which in turn relied in part, and expanded upon Gumbs.

. As I have earlier indicated, I believe the majority’s reference to and reliance on Dunn is inapposite, as Dunn did not disturb our standard of review of remitted punitive damage awards in a non-due process/nonproduct liability context.

.Although BMW is not on point with this case and is therefore distinguishable, it nonetheless specifies three guideposts for courts to consider in the punitive damages area. First and foremost is the egregiousness of the defendant's conduct, i.e., deceit, fraud, etc., labeled “the degree of reprehensibility." BMW, 517 U.S. at 575, 116 S.Ct. 1589. Second, is the ratio of punitive damages to "the actual harm inflicted on the plaintiff.” Id. at 580, 116 S.Ct. 1589. The third and final guidepost is a comparison to sanctions for comparable misconduct. Id. at 583, 116 S.Ct. 1589. I agree with the majority that this third guidepost is not relevant to this appeal. Maj. Op. at 467-68.

. Dunn, of course, involved Virgin Islands common law, whereas the instant appeal is rooted in New Jersey statutory law, which governs the ultimate punitive damages award.

. The New Jersey Punitive Damages Act, among other provisions, provides that a jury may award up to 5 times the compensatory damages or $350,000, whichever is greater. N.J.S.A. 2A:15-5.14b. The Act is careful to circumscribe the essentials for a punitive damage award. It requires that the plaintiff prove, by clear and convincing evidence, that the harms alleged were caused by the defendant's acts or omissions, and that these acts or omissions were "actuated by actual malice *475 or accompanied by a wanton and willful disregard" for those who might be harmed. N.J.S.A. 2A: 15-5.12a. In this case, the jury's special verdict findings met each and every requirement of the Act. Hence, the jury’s punitive damage award could have exceeded even its $100,600,000 punitive damages award if it had multiplied the' $48,000,000 compensatory damages award by 5. As we note in text, infra, and note 8, infra, the District Court, in reducing the punitive damage, fully addressed all elements of the Act. See N.J.S.A. 2A:15-5.12b.

. The District Court considered the following: 1) the likelihood of serious harm resulting from EBI’s misconduct; 2) EBI's awareness or reckless disregard of that likelihood; 3) EBI’s conduct upon learning that their initial misconduct would likely cause harm; 4) the duration or any concealment of the misconduct; 5) the profitability of the misconduct; 6) when the misconduct was terminated; and 7) EBI’s financial condition.

. Indeed, the majority concedes that the full award of compensatory damages can be credited to EBI's tortious conduct: "[t]he breaches of contract here were so intertwined with the tortious scheme to steal Orthofix’s market that the full award is properly attributable to the torLious conduct.” Maj. Op. at 463-64.

. In an effort to alleviate this problem, New Jersey, and recently Alabama, have joined a growing number of states which have responded with legislation governing the award of punitive damages. See BMW, 517 U.S. at 614-16, 116 S.Ct. 1589 (Ginsburg, J., dissenting) (listing in appendix state statutes governing punitive damage awards).